**United States District Court**
For the Northern District of California

1
2
3
4                    UNITED STATES DISTRICT COURT
5                   NORTHERN DISTRICT OF CALIFORNIA
6
7   BENETTON USA CORPORATION,              No. C 10-03843 (JCS)
8              Plaintiff(s),
9        v.                                **ORDER RE GRANTING RIGHT TO
                                           ATTACH ORDER AND WRIT OF
10  M3T CORP, ET AL.,                      ATTACHMENT
                                           [Docket No. 19]**
11             Defendant(s).
    _____/
12
13
14  **I.      INTRODUCTION**
15          Plaintiff Benetton USA Corporation on its own behalf and as assignee of the rights of
16  Benetton Trading, USA, Inc., (hereafter "Plaintiff") has brought the present action to enforce several
17  contracts between Plaintiff and Defendants, Mirando Lauto a.k.a. Nando Lauto, M3T Corporation,
18  Bene West, Comben, Naben, Passben, Vaben, and Walben (hereafter "Defendants").  Plaintiff has
19  filed a motion to seek the issuance of a Writ of Attachment pursuant to Federal Rule of Civil
20  Procedure 64 and California Code of Civil Procedure ("Cal. Code Civ. Proc.") section 483.010
21  which would prevent Defendants from encumbering or disposing of certain real property and assets
22  (hereafter "the Motion").  The matter came on for a hearing on November 19, 2010, at which
23  counsel for Plaintiff and Defendants appeared.  Having considered the arguments of counsel and the
24  papers submitted and for the reasons stated below, the Plaintiff's Motion for Right to Attach Order
25  and Writ of Attachment is GRANTED.
26  **II.     FACTUAL BACKGROUND**
27          From August 1, 2005 to June 28, 2010, Plaintiff and Defendants entered into a number of
28  written agreements allowing Defendants to operate Benetton stores throughout California,
    Nevada, and Washington, and allowing Defendant Bene West Inc., to act as a local representative

**United States District Court**
For the Northern District of California

1   of Plaintiff.

2       In August 1, 2005, Defendants Naben and Veben, acting through Defendant Lauto, executed

3   and delivered to Plaintiff contracts entitled "Management Agreement," pursuant to which Naben and

4   Veben operated and managed leased Benetton stores in Napa, California and Las Vegas, Nevada.

5   *See* Declaration of Diane Mravcak, Vice President, Finance of Benetton USA Corporation,

6   ("Mravcak Decl."), ¶¶ 5-6; *see also* First Amended Complaint ("FAC"), ¶¶ 13-14.

7       In October, 2005, Defendant Passben, acting through Defendant Lauto, executed and

8   delivered to Plaintiff two contracts entitled "Management Agreement," pursuant to which Passben

9   operated and managed separate leased Benetton and Sisley stores in Las Vegas, Nevada. Mravcak

10  Decl., ¶ 7; *see also* FAC, ¶ 15.

11      On November 1, 2005, Defendants Naben Corp. and Comben Corp., acting through

12  Defendant Lauto, executed and delivered to Plaintiff contracts entitled "Authorization," pursuant to

13  which Plaintiff authorized Naben and Comben to use Plaintiff's authorized trademark in the

14  operation of a retail store in Napa, California and in Commerce, California.  Mravcak Decl., ¶¶ 8-9,

15  and Exhibits A-B; *see also* FAC, ¶¶ 16-17 and Exhibits A-B.  Also on November 1, 2005, Veben

16  amended its contract to add Walben and Passben.  Mravcak Decl., ¶ 10, and Exhibit C; *see also*

17  FAC, ¶ 18, Exhibit C.

18      On February 5, 2007, Defendant Lauto delivered a contract to Plaintiff entitled "Continuing

19  Personal Guaranty."  By signing this document, Defendant Lauto personally guarantied payment

20  owed by Comben, Naben, Passben, Veben and Walben to Benetton.  Mravcak Decl., ¶ 11, Exhibit

21  D; *see also* FAC, ¶ 19, Exhibit D.

22      On June 1, 2007, defendant M3T, acting through Defendant Lauto executed and delivered to

23  Plaintiff a contract entitled "Authorization," pursuant to which Plaintiff authorized defendant M3T

24  to use Plaintiff's authorized trademark in the operation of three retail stores in San Francisco, CA,

25  one retail store in Santa Monica, CA, one retail store in Tulalip, Washington, and a sixth retail store

26  in Seattle, Washington.  Mravcak Decl., ¶ 12, Exhibit E; *see also* FAC, ¶ 20, Exhibit E.  Also on

27  June 1, 2007, Defendant Lauto executed and delivered to Plaintiff a contract entitled "Continuing

28  Personal Guaranty," to personally guarantee payment owed by M3T to Benetton Trading U.S.A.,

    Inc.  Mravcak Decl., ¶ 13, Exhibit F; *see also* FAC, ¶ 21, Exhibit F.  Defendant Bene West, which

**United States District Court**
For the Northern District of California

1   also transacted business under the name Benewest, Inc., acting through Defendant Lauto, executed

2   and delivered to Plaintiff a contract entitled "Local Representative Agreement," pursuant to which

3   Plaintiff engaged Bene West in the promotion of Plaintiff's products within a designated region of

4   the United States.  Mravcak Decl., ¶14, Exhibit G; *see also* FAC, ¶ 22, Exhibit G.

5          On May 29, 2009, Defendant Lauto, acting individually and on behalf of Bene West, M3T,

6   Passben, Veben, Comben, Naben and Walben, executed and delivered to Plaintiff a contract entitled

7   "Memo of Understanding" ("MOU"), through which Defendants acknowledged the "Total

8   Receivables" that were past due to Plaintiff at that time and set forth a plan by which Defendants

9   would pay Plaintiff the amount that was past due.  Mravcak Decl., ¶ 17, and Exhibit H; *see also*

10  FAC, ¶ 24 and Exhibit H.  In the May 29, 2009 MOU, Defendants acknowledged that "the Lauto

11  Companies owe [as of May 29, 2009] the aggregate amount of $4,874,000 to Benetton for

12  purchases of merchandise."  Mravcak Decl., ¶ 17, Exhibit H; FAC, ¶ 24.  The amounts

13  owed at that time were confirmed by Defendants:  "[defendant] Lauto acknowledge[d] that the Total

14  Receivables are past due and owing to Benetton and further acknowledge[d] that failure to make

15  payments constitutes a default of [defendant] Lauto's obligations under one or more of the Lauto

16  Contracts."

17         On January 26, 2010, Defendant Lauto, acting individually and on behalf of Bene West,

18  M3T, Passben, Veben, Comben, Naben and Walben, executed and delivered to Plaintiff a signed

19  contract entitled "Addendum no. 1 to Memo of Understanding" ("Addendum to the MOU"), through

20  which Defendants again acknowledged they had paid Benetton less than was required pursuant to

21  the terms set forth in the MOU and set forth new terms by which Defendants were to make payments

22  to Plaintiff for the amounts past due.  Mravcak Decl., ¶ 18, Exhibit I; *see also* FAC, ¶ 25, Exhibit I.

23         On June 22, 2010, Defendant Lauto executed and delivered to Plaintiff a contract entitled

24  "Termination Agreement," through which the parties agreed to terminate their business relationship.

25  Mravcak Decl., ¶¶ 19-20, Exhibit K; *see also* FAC, ¶ 26.  The Termination Agreement further

26  provides that Defendants' obligations have not been waived and survive the Termination

27  Agreement:

28         … Except with respect to the credits applied to the outstanding account balance
           for: (i) the purchase of the Acquired Assets and (ii) the total commissions due
           under the Agency Agreement, the entering into this Agreement, and the

3

consummation of the transactions contemplated herein, in no way negates, waives or reduces the liability and obligation of the Companies to [Benetton Trading, USA, Inc.] for the payment of such balance.

Mravcak Decl., ¶ 20, Exhibit K.

On July 12, 2010, Diane Mravcak, Vice President, Finance of Benetton USA Corporation, wrote to Defendant Lauto to provide an accounting of all amounts due from Defendants to Plaintiff and Benetton Trading, USA, Inc., after making all adjustments related to the takeover of Defendants' retail stores and commissions owed to defendant Bene West Inc.  Mravcak Decl., ¶ 21, Exhibit L.  The total amount then due was $3,952,100.77, exclusive of interest.

On August 18, 2010, Ms. Mravcak again wrote to Defendant Lauto seeking payment of the outstanding debt.  Mravcak Decl., ¶ 23 and Exhibit J; FAC, ¶ 28, and Exhibit J.   Plaintiff again provided an accounting to Defendants of the outstanding balance of $3,952,100.77, exclusive of interest.  The evidence submitted by Plaintiff indicates that Plaintiff has made several written demands for payment; however, Defendants have not paid the debts.  The evidence submitted by Plaintiff indicates that, together with interest calculated at 18% under the contracts, Defendants owe Plaintiff $5,038,451.82.  Mravcak Decl., ¶ 20.

## III.   ANALYSIS

### A.   Legal Standard

In pertinent part, Federal Rule of Civil Procedure 64 provides that,

[A]ll remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held ....

Fed.R.Civ.P. 64 (Emphasis added).

Thus, Rule 64 "permits state seizure provisions to be used in federal courts ..." *Reebok Int'l v. Marnatech Enters.*, 970 F.2d 552, 558 (9th Cir. 1992); *Pos-A-Traction, Inc. v. Kelly-Springfield Tire Co.*, 112 F.Supp.2d 1178, 1181 (C.D. Cal. 2000) (noting that Rule 64 incorporates state law for prejudgment seizures of property).  Under Cal. Code Civ. Pro. § 484.090(a), in order for a plaintiff to obtain issuance of a Right to Attach Order and Writ of Attachment after hearing the plaintiff must demonstrate:  (1) that the claim on which the attachment is based must be one on which an attachment may be issued;  (2) the probable validity of the claim on which the attachment is based;

4

and  (3) that the attachment is not sought for a purpose other than the recovery on the claim on which the attachment is based.

### B.    Issuance of Right to Attach Order

#### 1.    Claim Upon Which Attachment May be Issued

Plaintiff's action against Defendants is one in which a writ of attachment may be issued.  An attachment may be issued "only in an action on a claim or claims for money, each of which is based upon a contract, express or implied, where the total amount of the claim or claims is a fixed or readily ascertainable amount not less than five hundred dollars." Cal. Civ. Proc. Code § 483.010(a). Attachment is permitted on unsecured claims or claims secured by personal property, but not on claims secured by real property. § 483.010(a) & (b). Attachment lies on any claim against a partnership or corporation or on claims against individuals that arise out of the conduct by the individual of a trade, business, or profession. § 483.010(a) & (c); *Koninklijke Phillips Electronics N.V. v. International Disc. Manufacturers*, 2006 WL 4532985 *4 (C.D.Cal., May 16, 2006).  Thus, attachment is proper in a case based on an implied contract, whether implied in fact or implied in law. *McCall v. Superior Court*, 1 Cal.2d 527, 531-532 (1934); *Laundry v. Marshall*, 243 Cal.App.2d 170, 175(1966).  The Court finds that these requirements are satisfied here.

The breach of contract counts alleged in the FAC seek recovery of $3,952,100.77 – the amount owed by Defendant Lauto and the Defendant Companies, exclusive of interest attorney's fees and costs, that is due and unpaid on the Lauto debts.  This claim arises out of the conduct of Defendant Lauto's business as the owner, officer, and shareholder of the various Lauto companies.

In his opposition, Defendants do not dispute that they owe the amounts alleged by Plaintiff, nor do they dispute that the claims in this case are ones upon which attachment may be issued. Indeed, in the declaration submitted by Defendant Lauto, the Defendant does not dispute that Defendants owe Plaintiff $3,952.100.77.  Rather, he confirms that he signed personal guaranties for the debts owed to Plaintiff.  Although he states in his declaration that he never would have signed the personal guaranties if he had known that his personal home would be at risk, he does not dispute that he signed them or that he is otherwise responsible for the debts as alleged by Plaintiff in this case.  Lauto Decl., ¶¶ 13-14.  The Court finds, based upon the evidence before it, that the claims against Defendants in this case are ones upon which a writ of attachment may be issued.

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1    Commercial claims against an individual must stem from the individual's trade, business or

2    profession, which has been held to mean "for the purpose of livelihood or profit on a continuing

3    basis." *Nakasone v. Randall*, 129 Cal.App.3d 757, 764 (1982).  Attachment of assets of an

4    individual guarantor of a corporate obligation or business debt is appropriate if "the guarantee of the

5    primary obligor's debt sued upon is part and parcel of an activity which occupies the time, attention

6    and effort of the guarantor for the purpose of livelihood or profit on a continuing basis." *Advance*

7    *Transformer Co. v. Super. Ct..*, 44 Cal.App.3d 127, 144 (1974).

8        Accordingly, attachment may issue against an individual guarantor who is: (a) in the
     business of extending credit generally; or (b) so involved in the primary obligor's business

9    that the guaranty is made to further the guarantor's livelihood or profit on a continuing basis.
     . . . It is immaterial whether the individual guarantor is dependent upon the business for his

10   livelihood or devotes little time to it.

11   *Douglas v. Smith*, 2010 WL 1734903 *2 (C.D. Cal. April 28, 2010) (*citing Advance Transformer,*

12   *supra* at 135).

13       In the present case, there is no evidence that Defendant Lauto is in the business of extending

14   credit.  Plaintiff has submitted evidence, however, that Defendant Lauto owned and operated the

15   Lauto Companies and that in the course of this work, he personally guaranteed the debt of the Lauto

16   Companies to Plaintiff Benetton.  Mravcak Decl., ¶¶ 11 and 13, Exhibits D and F.  Further, as stated

17   above, Defendant Lauto admits in his own declaration that he signed personal guaranties for the

18   debts of his companies owed to Plaintiff.[1]  *See* Declaration of Nando Lauto, ¶¶ 13-14 .  A writ of

19   attachment is proper on the facts of the present case.

20           **2.**    **Probable Validity of Claim**

21       "A claim has 'probable validity' where it is more likely than not that the plaintiff will obtain

22   a judgment against the defendant on that claim." Cal. Code Civ. Pro. § 481.190.  The Court finds

23   that Plaintiff's claims for repayment pursuant to defendant's continuing personal guaranties and

24

25   _____

26       [1]Defendants argue that many of the contracts at issue are not with Plaintiff Benetton USA, but
     were entered between Defendants and Benetton Trading.  First, Defendants are incorrect.  Some of the

27   contracts at issue in this case were between Defendants and Plaintiff Benetton USA.  Second, Plaintiff
     Benetton USA has submitted a supplemental declaration of its Vice President of Finance for Benetton
     Trading USA, which states that on August 12, 2010, Benetton Trading USA, Inc. and Benetton USA

28   Corporation entered into an assignment agreement whereby Benetton Trading assigned its rights and
     remedies to Benetton USA.  This declaration and accompanying assignment agreement satisfy the Court
     that the Plaintiff in this matter is properly before the Court pursuing its remedies under the pertinent
     agreements.

6

United States District Court

For the Northern District of California

other contractual obligations meet this requirement.  Mravcak Decl., ¶¶ 5-24.  Here, it appears from the evidence submitted by Plaintiff that Defendants received the products from Plaintiff as evidenced in the MOU, Addendum to the MOU, Termination Agreement and other contracts. Mravcak Decl., ¶¶ 17-20.  Similarly, Defendants acknowledged in the MOU and the Addendum to the MOU that they incurred the obligations referenced and itemized in the Demand.  Mravcak Decl., ¶¶ 17-18.

The Court finds that it is more likely than not that Plaintiff will obtain a judgment against Defendants on the promissory instruments and contracts referenced in the First Amended Complaint and attached to the Amended Declaration of Diane Mravcak.[2]

### 4.    Purpose of Attachment

Plaintiff has declared that the attachment is not sought for a purpose other than the recovery of the amounts owed to Plaintiff on the contracts at issue in this case.  In the First Amended Complaint, Plaintiff Benetton alleges that it provided goods and services to Defendant Lauto and the Defendant's Companies in connection with Defendant Lauto's operation of various Benetton stores in California, Washington and Nevada and in connection with the local representative of Benewest. *See* Mravcak Decl., ¶¶ 5-24.  Plaintiff seeks pre-judgment attachment of Defendant Lauto's real property for the purpose of attempting to secure recovery of its anticipated judgment and out of concern that Defendant Lauto's financial situation is deteriorating.  Mravcak Decl., ¶ 25-27.

### 5.    The Description of the Subject Property is Sufficient

Plaintiff conducted an asset search for each of the Defendants.  Mravack Decl., ¶ 25.  As a result of that search, Plaintiff alleges that certain real property located at 407 11th Street, Santa Monica, California 90402 is recorded in the name of Defendant Lauto.  Mravcak Decl., ¶ 25. Plaintiff provides the following legal description of the property:

---

[2]Defendant objects that Diane Mravcak lacks personal knowledge of the transactions and documents at issue in this case.  These objections are without merit.  In her declaration, Ms. Mravcak, Vice President of Finance for Benetton, states that she has personal knowledge of the relevant documents and contracts in this case, including stating that she has authored several of them, and drafted multiple letters demanding payment from Defendant Lauto. *See e.g.*, Mravcak Decl., ¶ 23 ("On August 18, 2010, I again wrote to Mr. Lauto, in his own capacity and as the legal representative of the Lauto Companies, to demand payment of the outstanding accounts receivable.  Once again, I provided an accounting to Defendants, evidencing the outstanding balance of $3,952,100.77, exclusive of interest and attorneys' fees.").  The Defendants' evidentiary objections are overruled.

United States District Court

For the Northern District of California

Lot 21, Block 11 of the Palisades Sheet 4, in the City of Santa Monica, County of Los Angeles, State of California, as per map recorded in Book 23 page 142 of Maps, in the office of the County Recorded of said County.

Mravcak Decl., ¶ 25, Exhibit M.  The property has a Parcel Id Number of 4280-014- 042.  Plaintiff alleges that the property has an estimated value of $2 million but that the property is currently encumbered by two mortgages, totaling approximately $500,000.00.  Mravack Decl., ¶ 25. Thus, Plaintiff believes that there is approximately $1.5 million dollars in equity on the property, part or all of which may be attached by Plaintiff or used by Plaintiff to satisfy any judgment in its favor. Plaintiff further alleges that "the Lauto Companies may own corporate property which is subject to attachment pursuant to subdivision (a) of Code of Civil Procedure Section 487.010 and defendant Lauto may own or maintain an interest in other property including real property, community property, automobiles, savings accounts, checking accounts, securities and investment accounts. Plaintiff believes that this additional property may also be attached to satisfy any judgment in favor of Plaintiff."  Pl.'s Motion at 6.  Accordingly, the Court finds the Plaintiff's description of the Defendant Lauto's real property is sufficient.

**6.     Plaintiff is Prepared to Post a $10,000 Deposit**

In recognition of the requirement under Cal.Code Civ. Pro. § 489.210, that before a writ of attachment may be obtained, "the plaintiff shall file an undertaking to pay the defendant any amount the defendant may recover for any wrongful attachment by the plaintiff in the action," Plaintiff is prepared to make a $10,000 cash deposit pursuant to Cal. Code Civ. Pro. § 995.710.

**7.     Defendants Have Not Filed a Claim That the Subject Property is Exempt from Attachment**

Under California law certain property is exempt from attachment.  *See* Cal. Civ. P. § 484.070.  If a defendant objects to a request for a writ of attachment on the ground that his property is exempt, and the plaintiff opposes the claim, the defendant bears the burden of proving that the property is exempt.  Cal. Civ. P. § 484.070(g).  Here, Defendants have made no claim that the property of Defendant Lauto is statutorily exempt from attachment.

**IV.   CONCLUSION**

For the foregoing reasons, the Court GRANTS Plaintiff's request for Right to Attach Order and issues a writ of attachment for the following property of the Defendant Lauto:

1.   Plaintiff has the right to attach property of Defendants Mirando Lauto, a.k.a. Nando Lauto, M3T Corporation, Bene West, Inc., Comben Corp., Naben Corp., Passben Corp., Veben Corp., and Walben Corp., in the amount of $5,038,451.82;

2.   Pursuant to California Code of Civil Procedure § 995.710, the Plaintiff shall make a cash deposit of $10,000 with the Clerk of the Court prior to the Court's issuance of the writ of attachment;

3.   The Clerk of the Court shall issue a writ of attachment against the following property of Defendants: any interests in the real property located at 407 11th Street, Santa Monica, California 94042.

IT IS SO ORDERED.

Dated: December 1, 2010

_____
JOSEPH C. SPERO
United States Magistrate Judge

United States District Court

For the Northern District of California